**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Wanda Charping and Government Accounting Solutions LLC, | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No.: 2:16-cv-2692-PMD-BM |
| v. | ) ) ) | **ORDER** |
| Town of Andrews, Sudha Patel, Christopher L. Anderson, Eddie Lee, Jr., Mauretta Dorsey, Kaynnera Capers, Rodney Giles, Angela Anderson, Patsy Greene, and Mattie McGee, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

This matter is before the Court on Plaintiff Wanda Charping's objections to United States

Magistrate Judge Bristow Marchant's Report and Recommendation ("R & R") (ECF Nos. 137 &

132).   For the reasons set forth herein, the Court overrules Plaintiffs' objections, grants

Defendants' motion for partial summary judgment on Plaintiffs' federal claims, and denies

Plaintiffs' motion for summary judgment.   Accordingly, the Court remands Plaintiffs' state-law

claims to the South Carolina Court of Common Pleas for Horry County, South Carolina.

## BACKGROUND

This action arises out of Plaintiff's[1] work as an accountant for the Town of Andrews (the

"Town").   Charping brings three federal claims, along with a number of state-law claims, against

Defendants based on her allegations that they illegally seized and detained her during a budget

workshop, that they violated her First and Fourteenth Amendment rights by asking her to leave the

budget workshop, and that they violated her First Amendment right of freedom of association

---

1.     While there are two plaintiffs in this action, the Court will refer to Plaintiff Charping as Plaintiff in this Order unless otherwise noted.

because she was seized during the budget meeting while other members of the public were free to attend that public meeting. The Magistrate Judge recommends granting Defendants' motion for summary judgment as to Plaintiff's federal claims. As a result, the Magistrate Judge recommends remanding the remaining state-law claims to state court. Plaintiff objects to the Magistrate Judge's recommendations on two grounds.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The R & R has no presumptive weight, and the responsibility for making a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties may make written objections to the R & R within fourteen days after being served with a copy of it. 28 U.S.C. § 636(b)(1). This Court must conduct a de novo review of any portion of the R & R to which a specific objection is made, and it may accept, reject, or modify the Magistrate Judge's findings and recommendations in whole or in part. *Id*. Additionally, the Court may receive more evidence or recommit the matter to the Magistrate Judge with instructions. *Id*. A party's failure to object is taken as the party's agreement with the Magistrate Judge's conclusions. *See Thomas v. Arn*, 474 U.S. 140 (1985). Absent a timely, specific objection—or as to those portions of the R & R to which no specific objection is made—this Court "must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

To grant a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving

party.  *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990).  "[I]t is ultimately the nonmovant's burden to persuade [the court] that there is indeed a dispute of material fact.  It must provide more than a scintilla of evidence—and not merely conclusory allegations or speculation—upon which a jury could properly find in its favor."  *CoreTel Va., LLC v. Verizon Va., LLC*, 752 F.3d 364, 370 (4th Cir. 2014) (citations omitted).  "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate."  *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).  Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## DISCUSSION

First, Plaintiff objects to the Magistrate Judge's recommendation that the Court grant summary judgment to Defendants on Plaintiff's unlawful seizure cause of action.  Although Plaintiff's objection contains a lengthy recounting of various facts and social media posts, the gist of that objection is that there is a genuine issue of material fact as to whether Plaintiff was unlawfully seized and detained in the Town of Andrews' clerk's office.  "Section 1983 actions premised on alleged unlawful seizure, malicious prosecution, false arrest, and/or false imprisonment are analyzed as actions claiming unreasonable seizures in violation of the Fourth Amendment."  *Upchurch v. Wilkie*, No. 7:10-cv-1819-JMC-JDA, 2011 WL 3652324, at *4 (D.S.C. July 29, 2011) (collecting cases).[2]  In situations "[w]hen the actions of the police do not show an

---

2.  Although the Magistrate Judge analyzed Plaintiff's claims under South Carolina's false imprisonment framework based on the Fourth Circuit's opinion in *Barfield v. Kershaw County Sheriff's Office*, 638 F. App'x 196, 200 (4th Cir. 2016), the Court respectfully disagrees.  The Fourth Circuit's statement that the standards for a § 1983 Fourth Amendment cause of action and a South Carolina false imprisonment cause of action are the same related only to the Fourth Circuit's discussion of probable cause, not the other elements of false imprisonment.  Accordingly, the Court does not adopt that portion of the R & R.

unambiguous intent to restrain or when an individual's submission to a show of governmental authority takes the form of passive acquiescence," courts must determine whether "'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Brendlin v. California*, 551 U.S. 249, 254 (2007) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). Additionally, "when a person 'has no desire to leave' for reasons unrelated to the police presence, the 'coercive effect of the encounter' can be measured better by asking whether 'a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.'" *Id.* at 255 (quoting *Florida v. Bostick*, 501 U.S. 429, 435–36 (1991)). "In applying the totality of the circumstances test, courts look to numerous factors including the time, place and purpose of the encounter . . . ." *United States v. Weaver*, 282 F.3d 302, 309 (4th Cir. 2002). The Fourth Circuit has held that the following non-exhaustive list of factors is relevant to this inquiry:

> the number of police officers present during the encounter, whether they were in uniform or displayed their weapons, whether they touched the [person], whether they attempted to block his departure or restrain his movement, whether the officers' questioning was non-threatening, and whether they treated the defendant as though they suspected him of "illegal activity rather than treating the encounter as 'routine' in nature."

*United States v. Jones*, 678 F.3d 293, 299 (4th Cir. 2012) (quoting *United States v. Gray*, 883 F.2d 320, 322–23 (4th Cir. 1989)). The "'reasonable person' standard 'is an objective one,' thus 'its proper application is a question of law.'" *Id.* (quoting *United States v. Weaver*, 282 F.3d 302, 309 (4th Cir. 2002)).

Plaintiff asserts that she was illegally seized and detained by Defendants in violation of the Fourth Amendment after the Town's mayor asked her to step out of a budget meeting. Plaintiff alleges that the Mayor, Rodney Giles, and the council members made this request so that a different

accountant could give a negative report about her work to the mayor and to the town council without her knowledge.

Plaintiff was present at the Town's budget meeting on June 17, 2015, to provide her usual financial and accounting advice in her capacity as a bookkeeper for the Town. She voluntarily left the budget meeting after the Mayor requested that she do so, and did not ask any questions. She testified that it was not unusual for her to leave when various meetings went into executive session. According to Plaintiff, as she left the meeting she was followed out by the police chief, Kaynnera Capers. Capers then escorted her past the Mayor's office, down a hallway towards the entrance to the Town's police department, and then back up the same hallway, through a door into a common area, and finally through the door of the town clerk's office. Plaintiff testified in her deposition that when she and Capers reached the end of the hallway he hesitated outside of the police department before turning around and walking Plaintiff back up the hallway to the clerk's office. He then placed her in the clerk's office, told her that someone would come and get her when she was needed in the meeting, and closed the door as he left. Plaintiff also testified that the office was not locked, that she was never told that she had to stay in the office, she never complained that she did not wish to be there, and she was certainly never told that she was under arrest.

Plaintiff remained in the clerk's office for about an hour and a half without interruption or being summoned back to the meeting. She then had to use the restroom. She opened the clerk's office door, propped the common area door open to prevent it from closing, exited the common area into the hallway, and walked to the restroom without seeing anyone. She emerged from the restroom to find a male police officer standing outside. That police officer walked Plaintiff back to the clerk's office and also shut the door behind her, but he never told her that she could not leave or that she was under arrest. Plaintiff testified that when the police officer shut the door she wanted

to run because she thought she was going to be arrested, although she did not explain what she thought she might be arrested for.  She also stated that she believed the police officer was guarding her when she emerged from the restroom.  She further testified that she did not feel free to leave after the police officer escorted her back to the clerk's office because she thought she would be arrested if she did so.  In contrast, the police chief testified that he was not told to guard the door of the clerk's office, and that no one else was told to guard the door.  Notably, when Plaintiff later returned to the budget meeting to perform her job duties as the Town's accountant she never questioned or protested her alleged confinement.

The Court concludes that a reasonable person in Plaintiff's position would have believed that she was free to leave during her encounter with Capers.[3]  First, the Court looks to the time, place, and purpose of the encounter.  The time of the encounter, shortly after 11:00 AM, marginally favors Capers' view of the interaction.  This was not an after-hours interaction, but rather an interaction during the middle of the day at a time when a public meeting was taking place.  The place of the encounter more strongly favors Capers' view.  This entire incident took place in city hall, the very place that Plaintiff ordinarily presented her advice to the Mayor and town council members.  Although Capers did walk Plaintiff past the entry to the police station, that police station is simply down the hall from the Mayor's office and the town clerk's office, and they never entered the police station.  As for the purpose of the encounter, Plaintiff was simply asked to wait until she was needed at the meeting, and she agreed to do so.  The Court now turns to the other factors listed above.  Although there was eventually a second police officer involved when Plaintiff left the restroom, Capers was the only officer involved who is also named as a defendant.  There is no

3.    Plaintiff did not name the second police officer as a defendant, and has not properly alleged supervisory liability under *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994), as to the rest of the Defendants.

evidence before the Court as to whether Capers was in uniform or not, but Plaintiff was certainly aware that Capers was the Town's police chief. There is also no evidence that Capers displayed his weapon, or that he ever touched Plaintiff as they walked. Although Plaintiff contends that Capers restrained her movement, both by intercepting her and walking her up and down the hallway, and by shutting the door behind her after placing her in the clerk's office, it is clear that such a restraint was minimal at most considering that the door to the clerk's office was unlocked, she was never told that she needed to stay there, and no one was guarding that door. There is no evidence that Capers ever questioned Plaintiff, and her testimony indicates that the encounter was relaxed because she and Capers chatted about an article she had sent him while they were walking down the hallway. Under the totality of the circumstances, and even viewing the evidence in the light most favorable to the Plaintiff, the Court concludes that a reasonable person in Plaintiff's position would have felt free to terminate the encounter by simply walking out the unlocked and unguarded door. As a result, Plaintiff has not stated a claim sufficient to survive summary judgment under § 1983 for Capers' violation of her Fourth Amendment rights.

The Court next turns to Plaintiff's objection to the Magistrate Judge's recommendation that the Court grant Defendants' motion for summary judgment as to Plaintiff's First Amendment claims. Plaintiff has two objections to the Magistrate Judge's analysis of her First Amendment claims. First, citing *Kass v. City of New York*, Plaintiff contends that she had the right to be present at the budget meeting because she was a willing listener. 864 F.3d 200, 207 (2d Cir. 2017) (stating that the First Amendment's guarantee of freedom of speech "extends not only to the right to speak, but also to the right to listen and receive information"). Second, Plaintiff argues that the R & R improperly concluded that the Mayor and council members could exclude her from the budget meeting based on *Garcetti v. Cebalos*, 547 U.S. 410 (2006).

The First Amendment provides "the right to speak free of any state-imposed restrictions on the content of one's speech." *Collinson v. Gott*, 895 F.2d 994, 999 (4th Cir. 1990). That right, however, is "subject to the qualification that government officials may impose reasonable time, place, and manner restrictions upon speech in public forums, so long as they are content-neutral and are 'narrowly tailored' to serve a significant governmental interest." *Id.* (citing *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293, 295 (1984); *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647–48 (1981)). The "right may be subjected to greater restrictions in 'limited' public forums specially created by the state than in such traditional 'open' public forums as streets, parks, and general meeting halls." *Id.*

The interplay in the instant action between a variety of First Amendment protections and restrictions creates an atypical factual scenario. First, Plaintiff left the limited public forum of the Town's budget meeting at the Mayor's request, and she did not voice any contemporaneous objection. Additionally, Plaintiff admits that she was at the meeting in her capacity as the Town's accountant, and that she did not intend to attend the meeting as an ordinary citizen. However, she also contends that she left because she incorrectly believed that the meeting was in executive session and that it was customary for her to leave when Town meetings went into executive session. After Plaintiff left the public meeting, Chris Anderson proceeded to heavily criticize her accounting work for the Town. Once Anderson's presentation concluded, and after the meeting did go into executive session, Plaintiff was brought back to perform her ordinary job responsibilities. According to the meeting's minutes, she informed the Mayor and the council members about budgetary concerns for the Town during her later appearance at the meeting.[4]

---

4.    Notably, Plaintiff was not informed about the content of Anderson's presentation. As a result, Defendants' argument that she had an opportunity to address Anderson's presentation when she returned to the meeting is disingenuous.

Excluding Plaintiff altogether from a limited public forum in the form of the Town's budget meeting cannot be a reasonable time, place, and manner restriction, as "[t]he government violates the Free Speech Clause of the First Amendment when it excludes a speaker from a speech forum the speaker is entitled to enter." *Christian Legal Soc'y v. Walker*, 453 F.3d 853 (7th Cir. 2006). "[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti*, 547 U.S. at 417. When the Mayor asked Plaintiff to leave the budget meeting before she could even get settled, he barred her from saying anything that she might have otherwise said at that meeting, and from listening to the speech of a willing speaker in a limited public forum. *See Surita v. Hyde*, 665 F.3d 860, 870 (7th Cir. 2011). As Plaintiff states in her objection, the First Amendment provides the right to speak as well as to listen. However, Plaintiff's First Amendment rights were not violated when the Mayor asked her to leave the meeting because she left of her own volition. *See Tennant v. City of Georgetown*, No. 2:12-cv-370-RMG, 2014 WL 4101209, at *4 (D.S.C. Aug. 18, 2014) (holding that the plaintiff had not stated a claim for a First Amendment violation because his protected right to free speech was not restricted when he voluntarily walked out of a city council meeting), *aff'd sub nom. Tennant v. Georgetown*, 597 F. App'x 752 (4th Cir. 2015).

The Court concludes that the Supreme Court's decision in *Garcetti* and this Court's decision in *Tennant* counsel the conclusion that Plaintiff cannot state a claim for violation of her First Amendment rights under these circumstances. *Garcetti* states that "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." 547 U.S. at 422. Here, the Mayor asked a public employee to leave a meeting that she admits she was only attending in her capacity as a public employee. Plaintiff did not voice any objection to temporarily leaving that public

meeting, she never attempted to speak in the first place, and although she contends that she mistakenly believed the meeting to be in executive session, the most reasonable inference is that Plaintiff did not object to leaving the meeting because she was admittedly not there in her capacity as a citizen in the first place. Plaintiff did not live in Andrews, or even nearby. Instead, she commuted to perform her job duties for the Town from her home in Chapin, South Carolina. As a result, she more than likely had no interest in the portions of the meeting other than those where she was actually performing her job duties. Because Plaintiff was not acting as a citizen when she attended the meeting to present her accounting and financial advice to the Mayor and the council members, *see Garcetti*, 547 U.S. at 422, and because she voluntarily left the meeting after the Mayor asked her to leave, *see Tennant*, 2014 WL 4101209, at *4, the Court concludes that Defendants are entitled to summary judgment on this claim as well.

Having concluded that Defendants are entitled to summary judgment on Plaintiff's federal claims, the only remaining claims are Plaintiff's state law causes of action. "A federal court has discretion to decide pendant state law claims if federal and state claims arise out of a common nucleus of operative facts; however, if the federal claims are dismissed before trial, the state claims are normally dismissed as well." *Tennant*, 2014 WL 4101209, at *5. The Court does so here, and dismisses Plaintiff's state law causes of action without prejudice.

## CONCLUSION

For the foregoing reasons, the Court **ADOPTS** the Magistrate Judge's R & R, subject to the modification in footnote two, and therefore **GRANTS** Defendants summary judgment on Plaintiff's federal causes of action. Accordingly, Plaintiff's motion for summary judgment is **DENIED** as to those causes of action. The Court remands the remaining causes of action to the South Carolina Circuit Court for Horry County.

**AND IT IS SO ORDERED**.

PATRICK MICHAEL DUFFY
United States District Judge

**February 28, 2018**
**Charleston, South Carolina**